Hunt, J.
Plaintiff’s intestate was killed on Marcb 13, 1907, between eight and nine o’clock p. m. by defendant’s train, at the Dreman street crossing in Cincinnati. Defendant’s railroad is a double track at that place and Dreman street is improved with curbing and a brick pavement. It is the outlet of a limited locality. The deceased lived on the north side of Dreman street west of the railway, and was returning home after being at the grocery located on the south side of Dreman street, about eighty feet east of the railroad. The night was dark, rainy, somewhat sleety, foggy, with a strong wind blowing in gusts from the west. There is some evidence that a freight train had passed south immediately before the accident. Plaintiff had a shawl oyer her head and was carrying an open umbrella held unsteadily in such *50 a way as to protect her from the west wind. The deceased had crossed Dreman street to the north and was about to cross the railway when she was struck and carried some one hundred feet north and thrown on the easterly side of the railroad.
There was neither watchman nor gates at the crossing, and although there was an automatic alarm bell there, it seems to. have been out of order. There was evidence tending to prove that the whistle of the approaching train was not blown for the crossing and that the engine bell was not rung; also' evidence by the defendant to the contrary. The engine had an electric headlight, which defendant’s evidence shows to have been lighted. The train was an express train going - north, running át its usual rapid rate of speed and upon its regular time. The train crew knew nothing of the accident until a day or so afterwards, although the engineer says he was seated on the right or easterly side of his cab and was beeping a lookout ahead. The track for at least one-half mile in the direction in which the express train approached was practically straight, and except for the smoke of the freight train, if any passed, the rain, sleet, fog and the usual darkness of night, the train could have been seen if the deceased had looked, at any time while she was within fifty or twenty-five feet of the tracks.
The question as to whether under the circumstances the defendant should haye maintained a watchman, or gate, or ,both, the want of repair of the automatic bell, the plaintiff’s evidence as to the failure to whistle or ring for the crossing, and the speed at which the train was run, under the circumstances clearly made the issue as to defendant’s'negligence an issue to be determined by the jury, and when so determined a final determination. .
The issue as to the negligence of the deceased is not so clearly an issue to be determined by the jury, and when so determined is not so clearly a final determination.
The defendant relies on what is claimed by him to be the fact, to-wit: that if before the deceased had entered the zone of danger and while she was anywhere within at least twenty-five feet of the track, She had looked in the direction of the approaching train, she could not have failed to have seen the approaching train, and that therefore the fact that she was struck under such *51 circumstances, conclusively establishes the fact that she did not look and wás therefore negligent.
It may be conceded for the purposes of this case that the duty to look in the direction of a probably approaching train is absolute, and that for a pedestrian to be struck by a rapidly moving train, the dangerous proximity of which he could have 'seen, is conclusive evidence that he did not look. The rule may be different with the driver of a vehicle. Both driver and pedestrian in the exercise of ordinary care can use means to protect themselves from the weather. Both in the exercise of ordinary care, not being advised of an approaching train by signal or other methods ordinarily used by prudent railroad men, may approach the track at the crossing, but the driver under such circumstances may find that he can not retreat, and being confronted, without negligence on his part but by negligence of the railroad company, with two dangers, one from the approaching train if he crosses, and one from the action of his horse if he stops so near the passing train, the fact that he chose to cross, although, ordinarily but not always the most dangerous, is not conclusive evidence' of negligence on his part. The pedestrian is ordinarily confronted with only one danger up to the time he actually gets in the way of the approaching train.
Under the circumstances of this case it does not necessarily follow that the deceased would unquestionably have seen the train. In answer to defendant’s interrogatories the jury has specially found otherwise up to the time she was within five feet of the track. Under ordinary circumstances she would have seen the train as defendant claims, but there is evidence that the conditions were not ordinary. If the automatic bell was not rung and there was neither whistle nor engine bell for the crossing, the deceased to a certain extent had a right to presume that no train was coming, and the night being so dark, rainy, sleety, foggy and gusty, that the engineer, looking ahead in the area lighted by the electric headlight, in which area the deceased must have been, did not see the deceased, the question as to whether the deceased could have seen the approaching tram is not so conclusively and affirmatively decided by the admitted circumstances of the case as to make such question a mere question of *52 law, noi so manifestly contrary to the weight of the evidence as to require the finding of the jury thereon to be set aside by the trial, court, especially as under our system of procedure the plaintiff and the defendant have not equal rights to have the findings of the trial court upon the weight of the evidence reviewed by the circuit court.
The motion to set aside the verdict of $2,000 for the plaintiff is therefore overruled.